IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LINDA DIANE BLACK                                                                   PLAINTIFF

       VS.                              Civil No. 2:15-cv-02148

CAROLYN W. COLVIN                                                                 DEFENDANT
Acting Commissioner, Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Linda Diane Black, brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of The Act.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 11.[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.    Background:**

Plaintiff protectively filed her DIB application on February 18, 2013, (Tr. 56) and her SSI application on February 19, 2013, (Tr. 57) alleging she was disabled due to chronic back pain. (Tr.

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___."  The transcript pages for this case are referenced by the designation "Tr. __."

1

56-58). Plaintiff's alleged an onset date was June 1, 2007.[2] (Tr. 189). Her disability applications were denied initially and again upon reconsideration. (Tr. 58-68, 69-79, 82-92, 94-105).

Thereafter, Plaintiff requested an administrative hearing, and the request was granted. (Tr. 121-124). Plaintiff's administrative hearing was held on February 27, 2014. (Tr. 29-55). Plaintiff was present and represented by counsel, Vincent France. *Id.* Plaintiff and Vocational Expert ("VE") Dr. Larry Seifert testified at the hearing. *Id.* At this administrative hearing, Plaintiff was fifty-four (54) years old (Tr. 35), which is defined as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d) (2015) (DIB) and 20 C.F.R. § 416.963(d) (2015) (SSI). As for her education, Plaintiff testified she completed high school. (Tr. 36).

Following the hearing, on July 18, 2014, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (Tr. 16-23). In this decision, the ALJ found Plaintiff met the disability insured status requirements under the Social Security Act through December 31, 2009. (Tr. 18, Finding 1). He also found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 9, 2009. (Tr. 18, Finding 2). The ALJ determined that since the alleged onset date of disability, Plaintiff had a severe impairment of Musculoskeletal Disorder (Back Disorder). (Tr. 18, Finding 3). He further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 19, Finding 4).

In the decision, the ALJ considered the entire record and determined Plaintiff had the residual functional capacity ("RFC") to perform light work except as follows:

> "claimant can frequently lift and/or carry ten pounds and occasionally twenty pounds, sit for a total of six hours in an eight hour workday, and stand and/or walk

---

[2] At the February 27, 2014 hearing before the ALJ, Plaintiff amended her alleged onset date to March 9, 2009, and requested a closed period of disability from March 9, 2009, through May 1, 2013. (Tr. 32-33).

for a total of six hours in an eight hour workday. The claimant cannot work overhead bilaterally." (Tr. 19, Finding 5).

The ALJ further determined Plaintiff was unable to perform any Past Relevant Work ("PRW"). (Tr. 22, Finding 6). The ALJ then considered whether Plaintiff retained the capacity to perform other work existing in significant numbers in the national economy. (Tr. 22-23). In making his determination, the ALJ relied upon the testimony of the VE as to whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC. *Id*. Specifically, the VE testified an individual with Plaintiff's limitations would be able to perform the requirements of the following occupations: (1) Bill Collector with 753 such jobs in Arkansas and 113,101 nationwide; (2) Fishing Lure Assembler with 3,176 jobs in Arkansas and 185,398 nationally; and (3) Membership Solicitor with 620 jobs in Arkansas and 127,251 nationally. *Id*. Therefore, the ALJ determined Plaintiff had not been under a disability from the amended onset date of March 9, 2009, through the date of the decision. (Tr. 23, Finding 11).

Plaintiff requested review by the Appeals Council of the July 18, 2014 decision by the ALJ. (Tr. 6). However, the Appeals Council denied her request for review of the decision. (Tr. 1-3). Thereafter, on July 31, 2015, Plaintiff filed the present appeal with this Court, ECF No. 1, and the Parties consented to the jurisdiction of this Court. ECF No. 11. The case is now ready for decision.

**2.** **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. 42 U.S.C. §§ 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his

or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  *See Cox*, 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**3.**     **Discussion:**

In her appeal brief, Plaintiff argues only that the ALJ erred in his RFC determination.  ECF No. 13 at 1-4. Defendant responds that Plaintiff failed to meet her burden of proving that she was entitled to additional limitations, and thus, substantial evidence supports the ALJ's RFC determination.  ECF No. 14 at 6-13.  The Court will consider these arguments.

**A.**     **RFC Determination**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. It is assessed using all relevant evidence in the record. *Id.* This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id.*

Plaintiff alleges only that the ALJ's RFC determination was not supported by the evidence. ECF No. 13, at 1-4. In the present case, the ALJ considered the medical assessments of the examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records, when he determined Plaintiff could perform light work with limitations. (Tr. 15-17). The testimony revealed that due to continued complaints of thoracic back pain, Plaintiff underwent a cervical fusion in 2003. (Tr. 39-40). She testified she was told by doctors that her thoracic pain was referred pain from her neck. (Tr. 39-40). Plaintiff testified at the hearing that the fusion surgery did not resolve her back pain. (Tr. 40).

Plaintiff's medical records reveal that in August of 2009, Plaintiff saw Dr. Lance Barton, who assessed her with thoracic spine pain, prescribed Darvocet and Flexeril, and suggested that she consider myelogram testing. (Tr. 253). A January 2007 CT of Plaintiff's thoracic spine showed a left-sided facet spur that projected medially at T9-10, which narrows the subarachnoid space on the left side. (Tr. 262). It also showed no focal disc protrusion or other significant abnormality. *Id*. A clinical notation on the corresponding medical record indicated, "nothing significant seen." *Id*. Additional imaging on that same occasion showed no abnormality. (Tr. 263).

On March 9, 2009, Plaintiff saw Dr. Barton for back pain, and she requested a referral to Dr. John Swicegood at Advanced Interventional Pain and Diagnostics of Western AR, LLC. (Tr. 252). A MRI from March 9, 2009, revealed the following: postoperative changes of the lower cervical spine; very small right-sided disc protrusion at T2-3 of questionable significance; and a spur off the left facet joint at T9-10 that abuts the cord, but does not produce significant canal stenosis. (Tr. 259). On March 11, 2009, Plaintiff saw Dr. Swicegood's colleague, Dr. Joseph Miller. (Tr. 256-258). Dr. Miller's notes indicate normal alignment, appropriate ROM for her age, no instability, tenderness at T-7 bilateral, tenderness in the paraspinous area, appropriate muscle

strength, and appropriate mood and affect. (Tr. 256-257). Dr. Miller diagnosed Plaintiff with displacement of intervertebral disc (thoracic) without myelopathy, pain in her thoracic spine, spondylosis (cervical) without myelopathy, and spondylosis (thoracic) without myelopathy. *Id*. He recommended conservative treatment, including adding Cymbalta to her existing medication and continuing her physical therapy efforts. (Tr. 258). He also recommended Plaintiff undergo a thoracic epidural steroid injection; however, the procedure was cancelled when Plaintiff was unable to remain still and to refrain from scratching her back during the procedure. *Id*. In June of 2009, Plaintiff saw Dr. Barton for increased back pain as a result of a fall. (Tr. 251). For the increased pain, Dr. Barton prescribed Lorcet and advised Plaintiff to resume her Cymbalta. *Id*.

It was not until January of 2012, that Plaintiff was again seen by a physician for back pain. (Tr. 268). Specifically, on January 9, 2012, Plaintiff saw Dr. Greg Gibbons, who assessed her with thoracic back pain. (Tr. 268-269). Like Dr. Miller, Dr. Gibbons also recommended conservative treatment, consisting of rest, massages, stretching, medication as prescribed and physical therapy. (Tr. 269). His clinic notes indicate Plaintiff was taking Cymbalta, Flexeril, Hydrocodone, and Meloxicam. *Id*.

An x-ray of Plaintiff's thoracic spine from January 9, 2012, showed small anterior osteophytes at multiple levels, alignment unremarkable, and no acute fracture or dislocation. (Tr. 271). On April 30, 2013, Plaintiff was seen at Sparks Regional Medical Center for an examination of her thoracic spine. (Tr. 278). Testing revealed slight scoliosis and minimal lower thoracic hypertrophic changes. *Id*. Findings also showed mild thoracolumbar dextroscoliosis, normal alignment, small anterior osteophytes at multiple thoracic levels, and no evidence of fracture or subluxation. (Tr. 280).

On May 15, 2013, Dr. Clifford Evans, a consultative examining physician, examined the Plaintiff. Dr. Evans' examination revealed normal range of motion in her extremities and her spine, no muscle spasms, normal straight leg raising, normal reflexes, no muscle weakness or atrophy, good gait and coordination, normal limb function, and normal grip. (Tr. 284-285). Despite the findings, Dr. Evans' diagnosed Plaintiff with myalgia and neuralgia of the left upper thoracic area, etiology unknown, and moderate to severe limitation of the body as a whole due to pain in her left upper back with the cause of pain as "undiagnosed." (Tr. 286). In his comments, Dr. Evans noted that Plaintiff's pain could be referred from her left chest wall or left upper quadrant of the abdomen or diaphragm. (Tr. 287).

When considering the weight to be given to Dr. Evans' assessment, the ALJ found Dr. Evans' conclusions to be inconsistent with his own findings in his evaluation form. (Tr. 21). Dr. Evans' findings were normal, yet his conclusion was that Plaintiff had moderate to severe limitation of the body as a whole. (Tr. 282-287). A one-time evaluation by a non-treating physician is not entitled to controlling weight. *See Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998)(stating that a one-time evaluation by a non-treating psychologist is not entitled to controlling weight). Moreover, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)(citing *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). Moreover, Dr. Evans' medical record was a checkbox form. A treating physician's checkmarks on a medical form are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record. *See Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (*citing Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004)).

The ALJ also took into consideration, Plaintiff's subjective complaints of pain. While plaintiff testified at the hearing that she was in constant pain, she stated on her March 19, 2013 Function Report that she did housework, including some laundry, making the beds, and loading the dishwasher, in increments of time as she was able. (Tr. 40, 211-213). She also tried to get some form of exercise daily. (Tr. 211). She stated that she prepared meals when she could, and needed no remainders to take her medication or care for herself. (Tr. 213). As far as getting around, Plaintiff stated she could drive a car, ride in a car, and go out alone. (Tr. 214). While Plaintiff's husband usually did the grocery shopping, Plaintiff was able to pay bills, count change, handle a savings account and use a checkbook. *Id*. Plaintiff said she spends time with her children and grandchildren and visits them weekly. (Tr. 215). She also stated that she attends her grandson's ballgames and church, without needing anyone to accompany her. (Tr. 215).

Furthermore, the opinions of Dr. Ramona Bates and Dr. Bill Payne, both state agency doctors support the RFC. Both opined that an RFC of light work with occasional OH BUEs was appropriate. (Tr. 66, 90). Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's RFC determination of light work with limitations.

4. **Conclusion:**

Accordingly, the undersigned finds the ALJ's decision, denying benefits to the Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 59.

**ENTERED this 31st day of March 2016.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE